UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRIAN W. SHEARS,                    )
                                    )
                Plaintiff,          )        Case No. 1:09-cv-1011
                                    )
v.                                  )        Honorable Paul L. Maloney
                                    )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )        **REPORT AND RECOMMENDATION**
                Defendant.          )
_____)

       This is a social security action brought under 42 U.S.C. § 405(g), 1383(c)(3) seeking

review of a final decision of the Commissioner of Social Security finding that plaintiff was not

entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. On

September 14, 2006, plaintiff filed his applications for benefits alleging an April 9, 2006 onset of

disability. (A.R. 66-68). He later amended his claims to allege a May 4, 2006 onset of disability.

(A.R. 122, 264). Plaintiff was incarcerated from May 2006 through September 2006. (A.R. 275,

280). He is not eligible to receive social security benefits for any months he was confined in a jail,

prison, or correctional facility. 42 U.S.C. § 402(x)(1)(A). Accordingly, plaintiff's earliest possible

entitlement to DIB or SSI benefits is October 2006,[1] the month after he was released from

confinement on his criminal conviction. Plaintiff's disability insured status expired on September

_____

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, on
this alternative basis, October 2006 is plaintiff's earliest possible entitlement to SSI benefits.

30, 2008. Thus, it was his burden on his DIB benefits claim to submit evidence demonstrating that he was disabled on or before September 30, 2008. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims for benefits were denied on initial review. (A.R. 43-47). On September 4, 2008, he received an administrative hearing (A.R. 256-311), at which he was represented by counsel. On January 14, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 315-22). On September 4, 2009, the Appeals Council denied review (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision.

On November 3, 2009, plaintiff filed his complaint seeking judicial review of the Commissioner's decision denying his claim for DIB and SSI benefits. He raises the following issues:

I.      The ALJ committed reversible error by not properly considering the opinion of the treating physician's assistant in this case, in violation of case law and of SSR 06-03p, 2006 WL 2329939 (August 9, 2006), and also by failing to give that treating opinion proper weight.

II.     The ALJ did not have substantial evidence to support his finding that Plaintiff could have performed light work.

III.    The evidence in the Record which was added after the hearing should be considered by this Court under the authority of *Cotton v. Sullivan*.

(Statement of Issues, Plf. Brief at 14, docket #10). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that plaintiff's motion to remand this case to the Commissioner be denied and that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 9, 2006, through September 30, 2008, but not thereafter. (A.R. 317). Plaintiff had not engaged in substantial gainful activity on or after April 9, 2006. (A.R. 317). The ALJ found that plaintiff had the severe impairment of "degenerative disc disease of the cervical and lumbar spine." (A.R. 317). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 318). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work. (A.R. 318). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible:

> Claimant testified he is unable to work because of his neck and back. He reported that because of his back pain, he can no longer auger the ice to ice fish and can no longer sit in a boat to fish.
>
> After consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> Claimant says he sleeps and lies around a good deal of the day. He said he watches television, but cannot concentrate on the programming. I find that the record substantiates that he can perform activities to a far greater degree than he has alleged. In October 2006, he raked leaves (Exhibit 7F/1)[A.R. 174]. In April 2007, he handled a large piece of wood,

and on another occasion, changed a lady's [car's] brakes (Exhibit 14F/12, 14)[A.R. 210, 212].

The symptoms the claimant reports are minimal. In May 2006, he said he had no radicular or arm pain. He also had no bowel or bladder complaints (Exhibit 7F/4)[A.R. 177]. In October 2007, he reported pain for three to five days if he did intense physical activity, such as changing brakes (Exhibit 14F/14)[A.R. 212].

Claimant's physical examinations disclose few objective medical findings and corroborate that his allegations are overstated. Upon examination in May 2006, he could stand on tiptoes and heels. He had no muscle weakness, numbness or tingling in any extremity. No mechanical symptoms were noted regarding his neck, and no cranial nerve abnormalities were elicited (Exhibit 7F/4)[A.R. 177].

Subsequent medical examinations remained essentially within normal limits. While claimant reported pain with range of motion testing, he completed full range of motion of his neck, hips, shoulders, elbows, wrists, knees, and ankles. Although he described discomfort in his low back with bending and twisting, he had no radicular symptoms. Straight leg raising was negative bilaterally; he can heel and toe walk; and he can straighten from a forward bend without assistance. His deep tendon reflexes are normal and he has a normal gait. He does not require an assistive device to walk. At most, he has a positive Phalen's sign bilaterally and a slight weakness of the abductor pollicis brevis muscles in his upper extremities (Exhibits 7F/1-3; 10F; 11F; 14F/6-11, 14, 17)[A.R. 174-76, 185-90, 204-09, 212, 215].

While the claimant was prescribed various medications for pain relief (Exhibits 9E/3; 12E/6; 15F)[A.R. 116, 127, 228-32], he required only conservative treatment of his neck and back disorder. No surgical procedures or spinal injections have been prescribed and none are anticipated. Clifford B. Jones, M.D., an orthopedic specialist, has recommended only Williams flexion exercises and core strengthening (Exhibit 7F/1)[A.R. 174]. White Pine Family Medicine records reflect that use of medications and home exercises effectively relieve claimant's symptoms (Exhibit 14F/14)[A.R. 212].

A State agency physician opined that the claimant is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking six hours of an eight-hour workday; sitting six hours of an eight-hour workday; and working where he avoid[ed] concentrated exposure to extreme cold and wetness (Exhibit 6F)[A.R. 166-73]. The State agency medical consultant relied upon objective medical findings to support the opinion that the claimant can perform a limited range of light work. In view of the comments made by Dr. Jones and the claimant's treatment and medication history, I determine that the State agency opinion is well supported and provides the basis for the residual functional capacity finding of this decision.

Claimant's primary health care provider is Tom Cox, a physician's assistant with White Pine Family Medicine [G]roup. In August 2008, Mr. Cox offered his non-medical opinion that claimant could not perform his usual gainful employment of carpentry work for the next 12 months (Exhibit 13F/1)[A.R. 195]. Mr. Cox also provided a physical residual functional capacity assessment that suggests that the claimant is limited to sedentary work (Exhibit 16F)[A.R. 233-35].

Inasmuch as Mr. Cox is not considered an acceptable medical source in accordance with 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p, his opinion is not controlling. Moreover, Mr. Cox's statements are not even supported by his own observations recorded in White Pine Family Medicine office notes. Notably, in April 2007, Mr. Cox documented that claimant's range of motion was preserved. Mr. Cox noted that claimant had good strength, range of motion, and sensation in his lower extremities. (Exhibit 14F/14 [A.R. 212]. In January 2008, while Mr. Cox related that the claimant seemed to have a decreased range of motion in his cervical spine, no motor, sensory, or reflex abnormalities were noted in the claimant's upper extremities. In addition, although Mr. Cox stated that the claimant has decreased strength with extension about his knees, his reflexes and sensation were adequate in the lower extremities. (Exhibit 14F/17)[A.R. 215]. These contemporary inconsistencies raise serious questions about Mr. Cox's training, powers of observation, or his integrity; and therefore diminish his credibility.

I give greater weight to the State agency physician (an opinion consistent with the comments of Dr. Jones, the orthopedic specialist) than to the opinion of Mr. Cox. Accordingly, I find claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he should avoid concentrated exposure to extreme cold and should avoid all exposure to wetness.

(A.R. 319-20).

The ALJ found that plaintiff was unable to perform his past relevant work. (A.R. 320). Plaintiff was born on November 3, 1956. He was 49-years-old and classified as a younger individual on the date of his alleged onset of disability. (A.R. 321). On and after November 3, 2006, plaintiff was classified as an individual closely approaching advanced age. (A.R. 321). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 321). The transferability of jobs skills was not material to a disability determination. (A.R. 321). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question

regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 18,200 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 308-09). The ALJ found that this constituted a significant number of jobs. (A.R. 321). Using Rules 202.21 and 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2] (A.R. 315-322).

### 1.

Plaintiff's arguments are based on evidence that he never presented to the ALJ. (Plf. Brief at 8-10, 14, 17-19; Reply Brief at 1, 3-4). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993);

---

[2]Since 1996, the Social Security Act, as amended, has precluded awards of DIB and SSI benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that his drug abuse is not a contributing factor to his disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether his drug abuse was material to a finding of disability.

*see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

      The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. Section 405(g)." (Plf. Brief at 19). Plaintiff's reply brief concludes with an identical request. (Reply Brief at 4). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

      Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is

"good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Longworth v. Commissioner*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The November and December 2008 progress notes from Dean J. Toriello, M.D. (A.R. 244-47) are not new because they were created before the ALJ's January 14, 2009 decision. *See Hollon*, 447 F.3d at 483-84; *Foster*, 279 F.3d at 357. The March and April 2009 records from William Merhi, D.O. (A.R. 236-43) and the document created on March 30, 2009, by Jeffrey Robert Williamson, D.O. (A.R. 248-50) are new because they were generated months after the ALJ's decision.

    "Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Hollon*, 447 F.3d at 485; *Oliver*, 804 F.2d at 966; *see also Brace v. Commissioner*, 97 F. App'x 589, 592 (6th Cir. 2004) (claimant's decision to wait and schedule tests just before the hearing before the ALJ did not establish good cause). Plaintiff offers the following argument regarding the document Dr. Williamson created:

> Clearly, Dr. Williamson's report was obtained by Plaintiff's then-counsel after the hearing, but in light of the ALJ's completely unexpected failure to conform with basic Social Security law, Plaintiff's attorney (not this writer) acted reasonably in obtaining it, and thus this Court may consider it. The applicable law would not approve of evidence obtained after a hearing in order to support disability; however, when an ALJ blatantly violates the regulations of the Social Security Administration, that would seem to be a factor that should be considered in evaluating whether to consider such evidence.

(Reply Brief at 3). The above-quoted argument is not supported by legal authority. The good cause standard focuses on the actions taken by the party seeking to add evidence to the record. It is not

satisfied by conclusory statements that the ALJ violated social security regulations. It appears that the alleged violation by the ALJ of Social Security regulations was the ALJ's refusal to treat the physician assistant as an acceptable medical source. As is shown in section 2 below, the ALJ was correct in refusing to do so. The report from Dr. Williamson was an attempt by plaintiff's counsel to remedy this deficiency after the fact. This hardly can be deemed sufficient to meet the good-cause standard. Counsel should have presented acceptable medical source evidence in the first instance. I find that plaintiff has not carried his burden of demonstrating good cause.

Plaintiff offers the following arguments with regard to Dr. Merhi's records:

In addition, the other evidence about Plaintiff's serious cardiac impairment was clearly not available at the hearing, as it was generated only after Plaintiff was scheduled to undergo routine surgery. Since his cardiac impairment is quite significant and would preclude significant physical exertion (236-239), this new evidence reinforces the need, at the very least, for a remand to consider the new evidence which would certainly impact his abilities to perform work-related activities. And, in response to *Cotton* [*v. Sullivan*, 2 F.3d 695 (6th Cir. 1993)], this new evidence could not have been obtained before his hearing.

\* \* \*

With regard to the cardiac evidence, this condition clearly was of long standing and contrary to the Defendant's Brief on page 11, there was some evidence of cardiac impairment before the hearing, as noted above; however, that condition clearly was far more substantial than could be known at the time of the hearing.

(Plf. Brief at 18; Reply Brief at 3-4). There is no evidence that plaintiff had a longstanding cardiac condition. He was scheduled for carpal tunnel surgery in early 2009. A preoperative EKG returned abnormal results and plaintiff was referred to Dr. Merhi for a cardiac consultation. (A.R. 236). An exercise stress test performed on March 3, 2009, was "sub-maximal and positive for infarct of the infero-posterior segment of the left ventricle." (A.R. 237, 239). On April 9, 2009, Dr. Merhi performed a cardiac catheterization. (A.R. 242-43). Under these circumstances, I find that there was

good cause for plaintiff's failure to submit Dr. Merhi's records to the ALJ before he entered his decision.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Foster v. Halter*, 279 F.3d at 357; *Sizemore v. Secretary of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hensley v. Commissioner*, 214 F. App'x 547, 550 (6th Cir. 2007). The submissions of Dr. Williamson do not meet this standard. On March 30, 2009, more than two months after the ALJ entered his decision, plaintiff's attorney contacted Dr. Williamson and obtained his statement attacking the ALJ's decision and supporting opinions expressed by his subordinate, Mr. Cox. Dr. Williamson began his statement with the notation, "CC: DISABILITY PER TOM." (A.R. 248). He described the purpose of the March 30, 2009 evaluation as follows: "Gentlemen [is] here for evaluation of SSI eligibility. He has seen Tom Cox, PA-C for a full evaluation, but the court system seems unable or unwilling to accept this evaluation. I had a chance to review the letter from the court and was disappointed to see that the administrative law judge questioned Mr. Cox's powers of observation and integrity. This was out of line and unprofessional."[3] (A.R. 248). Thereafter, Dr. Williamson "review[ed] Mr. Cox's evaluation and repeated Mr. Shears['s] exam and history." (A.R. 248). Dr. Williamson concluded by stating, "In [s]ummary, I support Mr. Cox's findings. I see no glaring errors in his powers of observation or integrity." (A.R. 250). Dr. Williamson's statement in support of Mr. Cox's integrity is not a medical opinion. Leaving his outrage aside, Dr.

---

[3] The ALJ's treatment of Mr. Cox's opinion was neither "out of line" nor "unprofessional," but was dictated by law. Dr. Williamson's impertinent comments demonstrate the unfortunate tendency of physicians to become advocates for their patients in Social Security cases rather than objective medical sources.

Williamson's objective findings do not undermine the ALJ's conclusion. Dr. Williamson found that the MRI of plaintiff's neck showed arthritic changes, but no significant debilitating lesions or intrusion on the neuraminal foramen. (A.R. 248). He noted that a cardiology evaluation was being performed to assess plaintiff's abnormal EKG. Upon examination, Dr. Williamson found that plaintiff's heart beat was normal and he had no chest pain. Against medical advice, plaintiff continued to smoke 1.5 packs of cigarettes per day. (A.R. 249). He related a substance abuse history which included abuse of drugs and alcohol. Plaintiff indicated that he continued drinking on a social basis. He stated that he had abused both narcotics and cocaine, but he had not used illicit narcotics in years. (A.R. 249). Plaintiff had normal muscle strength in his lower extremities and his straight leg raising tests were negative bilaterally. His extremities had no clubbing or edema. His hands revealed ground-in dirt and grease callouses. (A.R. 249-50). Dr. Williamson acknowledged that there had "never been hard physical findings in the lower extremities to support neurologic compromise." (A.R. 250). Dr. Williamson's March 30, 2009 assessment performed in support of the opinions expressed by his subordinate, Mr. Cox, would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled on or before January 14, 2009.[4]

On March 3, 2009, Dr. Merhi found that plaintiff's exercise stress test was "positive for infarct of the infero-posterior segment of the left ventricle." (A.R. 237, 239). Dr. Merhi's records do not indicate that plaintiff had a significant cardiac impairment on or before January 14, 2009, the date of the ALJ's decision. I find that the newly proffered evidence from Dr. Merhi would

_____

[4]September 30, 2008, is the relevant date applicable to plaintiff's claims for DIB benefits.

not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled on or before January 14, 2009.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's motion for a sentence six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

## 2.

Plaintiff argues that the ALJ committed reversible error "by not properly considering the opinion of a treating physician's assistant" and violated SSR 06-3p by not giving "proper weight" to that opinion. (Plf. Brief at 14). Upon review, I find no error.

Physician's assistants are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d). There is no "treating physician's assistant rule" and the opinions of a physician's assistant are not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). Further, there is more than substantial evidence supporting the ALJ's finding that Mr. Cox's opinions were not entitled to significant weight because they were not well supported, were contrary to Cox's own evaluations, and were contrary to the opinions of acceptable medical sources with greater medical expertise.

SSR 06-3p clarifies how the Social Security Administration "consider[s] opinions from sources who are not 'acceptable medical sources.'" *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). SSR 06-3p begins by

emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. 2006 WL 2329939, at * 1. The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927). This is not a demanding standard and it was easily met here.

SSR 06-3p does not require that an ALJ discuss opinions supplied by "other sources" and explain the evidentiary weight assigned thereto. "[T]here is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." 2006 WL 2329939, at * 6. "While Ruling 06-3p certainly encourages ALJ's to evaluate each opinion in the record, regardless of its source, the ruling is not written in imperative form." *Smith v. Commissioner*, No. 4:09cv80, 2010 WL 1640271, at * 4 (E.D. Va. Apr. 22, 2010). SSR 06-3p consistently uses the permissive term "should." 2006 WL 2329939, at * 5-6. The one instance where SSR 06-3p requires an explanation by the ALJ is the rare circumstance where an ALJ gives greater weight to an "other" source's opinion over the medical opinion of a treating physician:

> [W]hen an adjudicator determines that an opinion from [an "other source"] is entitled to greater weight than an opinion from a treating source, the adjudicator **must** explain the reasons in the notice of decision in hearing cases . . . if the determination is less than fully favorable.

2006 WL 2329939, at * 6 (emphasis added).

The ALJ invoked and followed the course of action recommended by SSR 06-3p:

Factors for Considering Opinion Evidence
Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

2006 WL 2329939, at * 4. SSR 06-3p expressly recognizes that it is appropriate for the ALJ to give

greater weight to the opinion of an acceptable medical source based on his superior qualifications.

2006 WL 2329939, at * 5 ("The fact that a medical opinion is from an 'acceptable medical source'

is a factor that may justify giving that opinion greater weight than an opinion from a medical source

who is not an 'acceptable medical source' because, as we previously indicated in the preamble to our

regulations at 65 FR 34955, dated June 1, 2000, 'acceptable medical sources' 'are the most qualified

health care professionals.'"); *see Paulson v. Astrue*, No. 08-36049, 2010 WL 675573, at * 2 (9th Cir.

Feb. 26, 2010).

The ALJ was correct in refusing to treat the opinions of the physician's assistant as those of a treating doctor. The ALJ did consider this information and cogently explained why he discounted it. I find no basis for disturbing the Commissioner's decision.

## 3.

Plaintiff's brief and reply brief conclude with arguments that the ALJ's comments during the hearing "demonstrate a contempt for the Plaintiff" and "are not the kind of remarks that any litigant would expect from an impartial tribunal." (Plf. Brief at 18; Reply Brief at 4). Vague allusions that the ALJ was somehow biased against plaintiff do not provide a basis for disturbing the Commissioner's decision.

The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)). "The burden of overcoming this presumption rests on the party asserting bias, who must rebut the presumption by showing a conflict of interest or some other specific reason for disqualification." *McCrea v. Astrue*, No. 3:09-cv-68, 2010 WL 235141, at *10 (N.D. Fla. Jan. 15, 2010). Additionally, the party must come forward with convincing evidence that "a risk of actual bias or prejudgment" is present. *Collier*, 108 F. App'x at 364; *see Schweiker*, 456 U.S. at 195-96; *Navistar*, 921 F.2d at 1360. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States*

*v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Collier*, 108 F. App'x at 364. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Plaintiff is apparently relying on the excerpt of the hearing transcript quoted on page 10 of his brief (A.R. 270) as the evidence of bias.[5] When viewed in context, the ALJ's comment was directed to plaintiff's attorney in an effort to illustrate the weakness of the attempt by plaintiff and his attorney to minimize the importance of plaintiff's drug abuse and his related felony conviction. By way of background, on February 10, 2006, plaintiff reported to Physician's Assistant Cox that he had a 25-year history of cocaine abuse. (A.R. 199). He told Cox that the police had conducted a search of his home in late January 2006 looking for drugs and claimed that police had kicked him in the ribs during this incident. Upon examination, Cox could find no contusions or red marks. The

---

[5]Plaintiff did not assert that the ALJ was biased until after the ALJ denied his claims for DIB and SSI benefits. He never utilized the available administrative procedure for seeking an ALJ's disqualification. *See* 20 C.F.R. §§ 404.940, 416.1440. The regulations require that the issue of bias be raised at the earliest opportunity. *See Johnson v. Commissioner*, No. 09-11881, 2010 WL 1949638, at * 8 (E.D. Mich. Apr. 19, 2010). The hearing transcript reveals that plaintiff's attorney did not object to the statements plaintiff now offers as evidence that the ALJ was biased. (A.R. 279).

This court is encountering an increasing number of boilerplate arguments in social security cases accusing the ALJ of bias against the plaintiff or his attorney. Accusing an ALJ of bias is a very serious charge. It should not be made on a routine basis. The party claiming bias faces a very high evidentiary burden. Thus, litigants claiming that an ALJ was biased are seldom successful. *See, e.g.*, *Johnson v. Commissioner*, 2010 WL 1949638, at * 8; *Yang v. Astrue*, No. 1:08-cv-84, 2010 WL 476022, at * 9-10 (E.D. Cal. Feb. 4, 2010); *Martin v. Astrue*, No. 1:08-cv-46, 2009 WL 187716, at * 5-6 (N.D. Ind. Jan. 26, 2009).

x-rays and CT scan of plaintiff's chest returned normal results. (A.R. 199-202). Plaintiff was later convicted of manufacturing crack cocaine and served five months in jail. (A.R. 275-78).

Plaintiff attempted to persuade the ALJ that his medical record, showing that plaintiff had spent a quarter of a century abusing cocaine, was inaccurate. (A.R. 273). Plaintiff testified that he started abusing crack cocaine in 2005 and claimed that he had stopped using it before the September 4, 2008 hearing. (A.R. 273-74, 277). The exchange at issue occurred when Attorney David Wood began his questioning of his client by referring to the SWAT team raid on plaintiff's home followed by his felony drug conviction as "that little incident" involving the police:

BY THE ADMINISTRATIVE LAW JUDGE:

Q        Did you quit using cocaine?

A        Oh, yes.

Q        Quit selling it?

A        Oh, yes.

Q.       Yeah.

A.       Yes. I learned my lesson well.

ALJ:     Okay. Mr. Wood, do you want to pursue the impairments, develop the record in terms of what's wrong with him?

ATTY:        Sure.

EXAMINATION OF THE CLAIMANT BY ATTORNEY:

Q        So anyway you had that little incident involving the police but that more or less settled down and, and then --

ALJ:     It's not a little incident by the way.

ATTY:        Well –

-18-

ALJ:    The SWAT team comes and breaks up your drug company.

CLMT:        Well, it, it scared me, I'll tell you that.

ALJ:    I hate when that happens.

CLMT:        Oh, that scared me, they set a couple of repercussion [sic] bombs off and my
            neighbor a quarter of a mile down the road heard them.

ALJ:    Yeah, okay.

(A.R. 279).

It was appropriate for the ALJ to let plaintiff's attorney know that the question he had posed to the witness was absurd, and, more to the point, irrelevant. Plaintiff then chose to interject that he was scared during the SWAT raid. The ALJ's comment that followed was a bit flippant, but it effectively conveyed that being scared was not an unusual response when an individual is caught during a drug raid. The ALJ expressly directed counsel to focus on that which was important -- plaintiff's impairments. Counsel persisted in his efforts to minimize the effect of plaintiff's drug use and felony conviction. Plaintiff falls far short of presenting the clear and convincing evidence necessary to overcome the presumption of impartiality.

**4.**

Plaintiff argues that the ALJ's finding that he retained the RFC for a limited range of light work is not supported by substantial evidence. (Plf. Brief at 14; Reply Brief at 1). RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative determination made by the ALJ based upon all the evidence within the record. *Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). "[S]tatements from medical

sources about what a claimant can still do are relevant evidence, but they are not determinative inasmuch as the ALJ has the ultimate responsibility of determining disability and residual functional capacity." *Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see Longworth v. Commissioner*, 402 F.3d 591, 596 (6th Cir. 2005). Plaintiff had degenerative disc disease of the lumbar and cervical spine with no evidence of radiculopathy. His condition did not warrant surgical intervention. (A.R. 318-20). The ALJ found that the State agency physician's opinion that plaintiff retained the RFC for light work was persuasive because it was consistent with the record as a whole, including the opinion of Dr. Jones, an orthopedic specialist. (A.R. 320). The ALJ's finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence.

### 5.

Plaintiff challenges the ALJ's factual finding that his testimony regarding the intensity, persistence, and limiting effects of his symptoms was not entirely credible. (Plf. Brief at 16-17). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v.*

*Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009). I find that the ALJ's credibility determination regarding plaintiff's subjective complaints (A.R. 319-20) is supported by more than substantial evidence.

**6.**

Plaintiff's attack on the adequacy of the ALJ's hypothetical question to the VE is a reformulation of plaintiff's arguments attacking the adequacy of the ALJ's factual findings regarding his RFC and credibility. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gant v. Commissioner*, No. 09-5623, 2010 WL 1378427, at * 3 (6th Cir. Apr. 7, 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical properly included all limitations found to be credible, and therefore was not improper.

**Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's motion to remand this case to the Commissioner be denied and that the Commissioner's decision be affirmed.

Dated:  August 2, 2010        /s/  Joseph G. Scoville
                                       United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).